p

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KAIFENG WANG,

              Plaintiff,

    v.

TODD LYONS, et al.,

              Defendants.

Case No.  25-cv-10794-WHO

**ORDER GRANTING TEMPORARY RESTRAINING ORDER**

Re: Dkt. No. 2

Petitioner-plaintiff Kaifeng Wang ("Wang") moves the Court *ex parte* for a temporary restraining order that would, among other things, require his immediate release from ongoing detention by agents of Immigration and Customs Enforcement ("ICE") and prohibit ICE from re-arresting Wang without affording him a hearing before a neutral decisionmaker.  For the reasons set forth below, Wang's request is GRANTED.  I ORDER defendants to release Wang from his ongoing detention and prohibit defendant from re-arresting or otherwise re-detaining Wang without first providing him a hearing before an immigration judge at which the government establishes by clear and convincing evidence that revocation of his previously-granted interim parole is appropriate because detention is necessary to prevent his flight or to protect the public.

## BACKGROUND

The evidence before the Court establishes that Wang, a native and citizen of China, arrived in the United States on November 7, 2024 without inspection.  On December 18, 2024, ICE granted him interim parole for a period of one year.  Later, on January 21, 2025, ICE issued Wang a notice "notifying him to report to 630 Sansome Street, San Francisco, CA 94111 for a check-in to re-issue a new interim parole."  Motion for Temporary Restraining Order ("Mot.") [Dkt. No. 2] at 2.

United States District Court
Northern District of California

Wang filed an I-589 application for asylum with the United States Customs and Immigration Services ("USCIS") on March 5, 2025. *Id.* He was issued a Form I-589 receipt that same day. *Id.* The basis for his asylum application was his fear of "returning to China because he has suffered past persecution by the Chinese police because they arrested, beat, and tortured him." *Id.*

On June 6, 2025, USCIS issued a Notice of Dismissal of Form I-589 to Wang, stating that the asylum office "will issue an appointment notice for credible fear." *Id.* Wang was then paroled into the United States and has resided continuously in the United States since the issuance of parole. *Id.* On December 18, 2025, while attending a routine immigration check-in, ICE detained Wang, where he currently remains. *Id.*

## LEGAL STANDARD

The standard for issuing a temporary restraining order is largely identical to the standard for issuing a preliminary injunction. See *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Petitioners seeking such relief must establish that (1) they are "likely to succeed on the merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3) "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor and the other two Winter factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest— merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified). Although the substantive standards for both motions are similar, the timeframe for a temporary restraining order is different. While a preliminary injunction remains in effect pending final resolution of the litigation, "a TRO 'should be restricted to … preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing

and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)). Federal Rule of Civil Procedure 65(b)(1) allows a temporary restraining order to be issued without notice to the opposing party—i.e., ex parte—only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and "the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."

## DISCUSSION

As an initial matter, Wang has satisfied the requirements for issuance of an *ex parte* order. The affidavit of the petitioner's counsel demonstrates that he will suffer immediate and irreparable injury, loss, or damage by virtue of his continued detention before respondent can be heard in opposition, and that counsel attempted to contact the United States Attorney's Office on December 18, 2025.

With respect to the showing required to justify Wang's requested relief, he has demonstrated a likelihood of success on the merits of his claim that his ongoing detention violates his procedural due process rights under the Due Process Clause of the Fifth Amendment. "It is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty" that the Due Process Clause affords. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Upon identifying a protected liberty interest, the district court must determine the procedural due process afforded to the plaintiff under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under the *Mathews* test, courts balance three factors: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and finally the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."

United States District Court
Northern District of California

1  *Haygood v. Younger*, 769 F.2d 1350, 1357 (9th Cir. 1985) (en banc) (citing *Mathews*, 424 U.S. at

2  335).

3          Here, Wang has sufficiently identified his liberty interests in remaining out of immigration

4  custody.  Noncitizens like Wang who are conditionally released into the United States have a

5  significant liberty interest in remaining out of immigration custody.  *Pablo Sequen v. Albarran*,

6  No. 25-CV-06487-PCP, __ F. Supp. 3d __, 2025 WL 2935630, at *5 (N.D. Cal. Oct. 15, 2025);

7  *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017 ("[A] person who is in fact free

8  of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that

9  entitles him to constitutional due process before he is re-incarcerated").

10          Wang has also properly alleged that the *Mathews* factors suggest defendants failed to

11  provide Wang with the proper procedural due process requirements prior to incarceration.  First,

12  Wang's private interest in his liberty is substantial.  Wang has resided in the United States since

13  November 7, 2024, and certainly "has an interest in remaining in [his] home . . . providing for

14  [his] family . . . [and] maintaining [his] relationships in the community."  Mot. at 3; *Pinchi v.*

15  *Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (Pitts, J.) (citing *Diaz v. Kaiser*, No. 3:25-

16  CV-05071, 2025 WL 167684 (N.D. Cal. June 14, 2025)).

17          Additionally, Wang has shown that this detention without a hearing was an erroneous

18  deprivation of his liberty interests.  Wang maintains that the text of 8 U.S.C. § 1226(a) and §

19  1225(b)(2) demonstrate that he is not subject to mandatory detention and is afforded certain

20  procedural due process protections.  Mot. at 9–15.  Under 8 U.S.C. § 1226(a), a noncitizen "may

21  be arrested and detained pending a decision on whether the [noncitizen] is to be removed from the

22  United States."  Wang argues in detail that the plain text of the statute demonstrates that the

23  provision covers "those present within and residing within the United States and who are not at the

24  border seeking admission," including Wang.  Mot. at 12.  Under this reading, therefore, Wang

25  would be subject to hearings under 8 U.S.C. § 1226(a)—which allow individuals to be released if

26  they do not present a danger to persons or property and is not a flight risk—rather than 8 U.S.C. §

27

28

4

1225(b)(2)(A).[1]  *See* Mot. at 16; *Zadvydas*, 533 U.S. at 690; *Matter of Guerra*, 24 I&N Dec. 37

(BIA 2006).  I agree that under this reading of the statute, defendants have not shown how Wang

is either a flight risk of a danger to the community, and that Wang was entitled to a bond hearing

or release.  Mot. at 16; *Zadvydas*, 533 U.S. at 690; *Matter of Patel*, 17 I&N Dec. 597, 666 (BIA

1976) ("[A noncitizen] generally is not and should not be detained or required to post bond except

on a finding that he is a threat to the national security, or that he is a poor bail risk.") (internal

citations omitted); *Alvarenga Matute v. Wofford*, No. 1:25-CV-01206-KES-SKO, 2025 WL

2817795 (E.D. Cal. Oct. 3, 2025).  Because Wang never received a bond hearing, a completed

Notice and Order of Expedited Removal, or any other procedural protections, he has sufficiently

established a likelihood of erroneous deprivation of his Fifth Amendment rights.

Finally, Wang establishes that additional procedural safeguards—including a hearing

before a neutral decision-maker—is "one of the most basic due process protections" and would

place a "de minimis . . . burden on the government," especially in light of the potential costs to the

public by keeping Wang detained.  Mot. at 9 (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1049

(9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30

(2006).  Taken together, the strength of Wang's liberty interest, the high likelihood of erroneous

deprivation, and the government's minimal countervailing interest demonstrate that Wang is likely

to succeed on the merits of his procedural due process claim.

Wang has also demonstrated a likelihood of irreparable injury in the absence of temporary

relief due to his ongoing and likely unconstitutional deprivation of liberty.  "The loss or threatened

infringement upon [constitutional] rights for even minimal periods of time unquestionably

constitutes irreparable injury." *Cuviello v. City of Vallejo*, 944 F.3d 816, 832 (9th Cir. 2019)

(citation modified).  "When an alleged deprivation of a constitutional right is involved, most

courts hold that no further showing of irreparable injury is necessary." *Baird v. Bonta*, 81 F.4th

---

[1]  According to Wang, the DHS issued a policy on July 8, 2025 that "instructs all ICE employees
to consider anyone inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i)—including those present
without admission—to be an 'applicant for admission' and therefore subject to mandatory
detention."  Mot. at 11.  Wang believes this statute is being weaponized to detain and deport
individuals like himself, who should instead be processed under 8 U.S.C. § 1226(a).

1036, 1042 (9th Cir. 2023) (citation modified).  It follows from this conclusion that Wang "will

likely be deprived of [his] physical liberty unconstitutionally in the absence of the injunction . . .

that [he] ha[s] also carried [his] burden as to irreparable harm." *Hernandez v. Sessions*, 872 F.3d

976, 995 (9th Cir. 2017).

The final two *Winter* factors—the balance of the equities and the public interest—also tip

in Wang's favor.  These two factors are merged because the government is the opposing party.

*Nken v. Holder*, 556 U.S. 418, 435 (2009).  Because Wang has sufficiently alleged the policies

preventing him from obtaining bond "is inconsistent with federal law . . . the balance of hardships

and public interest factors weigh in favor" of granting the temporary restraining order.  *Moreno

Galvez v. Cuccinelli*, 387 F. Supp. 3d 1208, 1218 (W.D. Wash. 2019).  "Because public interest

concerns are implicated when a constitutional right has been violated, all citizens have a stake in

upholding the Constitution, meaning it is always in the public interest to prevent the violation of a

party's constitutional rights." *Baird*, 81 F.4th at 1042 (citation modified).  Where Wang is

suffering irreparable harm in detention, the potential harm to the government—at worst, a short

delay in detaining Wang until it makes the requisite showing of necessity before a neutral

decisionmaker—is minimal.  *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D.

Cal. June 14, 2025).

Finally, Wang's immediate release is required to return him to the status quo. The "status

quo" refers to the state of the parties' relationship "before the action challenged in the complaint

occurred." *Youth 71Five Ministries v. Williams*, No. 24-101, __ F.4th __, 2025 WL 2385151, at *5

(Aug. 18, 2025). Here, that is the moment prior to J.A.M.C.'s likely illegal detention. See *Pablo

Sequen*, __ F. Supp. 3d __, 2025 WL 2650637, at *4 n.2; *Kuzmenko v. Phillips*, No. 25-CV-00663,

2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a temporary restraining order

requiring immediate release of the petitioner back to home confinement from custody, as a

restoration of the status quo.

Because Wang satisfies all of the requirements for temporary injunctive relief and such

relief is necessary to restore the status quo, his motion for a temporary restraining order is

GRANTED.  And because "there is no realistic likelihood of harm to the [respondents] from

United States District Court
Northern District of California

1    enjoining [their] conduct," *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003), no security

2    is needed to ensure that respondents will be reimbursed for "costs and damages sustained by . . .

3    hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).  The Court exercises its

4    discretion under Rule 65(c) to dispense with the filing of bond.  *Jorgensen*, 320 F.3d at 919.

5                                              **CONCLUSION**

6            For the foregoing reasons, it is hereby **ORDERED** that petitioners' motion for a temporary

7    restraining order as to Wang is **GRANTED** to preserve the status quo pending further briefing and

8    a hearing on this matter.  Defendants are **ORDERED** to immediately release Wang from custody

9    and are **ENJOINED AND RESTRAINED** from re-detaining Wang without providing him a pre-

10   deprivation hearing before a neutral decisionmaker at which the government establishes by clear

11   and convincing evidence that detention is appropriate to prevent his flight or to protect the public.

12   Should defendants choose to conduct such a hearing, defendants are **ORDERED** to provide Wang

13   with reasonable advance notice of the time and place of the hearing and an order issued.

14           This Order shall remain in effect until **January 15, 2026.**  While Federal Rule of Civil

15   Procedure 65(b)(2) typically requires temporary restraining orders to "not . . . exceed 14 days,"

16   because of the upcoming holiday period, the Court finds that "good cause" exists to extend the

17   Order until a preliminary injunction hearing can be held on the matter.

18           **This Order SHALL be served on defendants such that they receive actual notice as**

19   **soon as possible.**  Petitioner shall file proof of service or a status report by no later than December

20   22, 2025 at 12:00 p.m. PT.  Defendants shall provide a status report confirming the release of

21   Wang by no later than December 22, 2025 at 12:00 p.m. PT.

22           Defendants are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not

23   be issued in favor of Wang.  The hearing will be held via Zoom videoconference at **10:00 a.m. PT**

24   on **January 8, 2026**.  Defendants shall file a response to Wang's motion by no later than January

25   2, 2026 at 5:00 p.m. PT.  Any reply shall be filed by January 6, 2026 at 12:00 p.m. PT.

26           **IT IS SO ORDERED.**

27   Dated: December 18, 2025

28                                                        William H. Orrick
                                                          United States District Judge

                                                    7