UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAIFENG WANG,<br><br>        Plaintiff,<br><br>    v.<br><br>TODD M. LYONS, et al.,<br><br>        Defendants. | Case No. 25-cv-10794-WHO<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION**<br><br>Re: Dkt. Nos. 1, 2, 4, 15, 16 |

On December 18, 2025, I granted a temporary restraining order barring respondents Sergio Albarran, Kristi Noem, the U.S. Department of Homeland Security, Christopher Chestnut, Minga Wofford, Tonya Andrews, Pamela Bondi, and the U.S. Immigration and Customs Enforcement ("ICE") (collectively, "respondents" or "the government") from re-detaining petitioner Kaifeng Wang ("Wang") without first providing him a pre-deprivation hearing before a neutral decisionmaker. I also issued an Order to Show Cause requiring the government to explain why a preliminary injunction should not be issued. The government has now responded, claiming that the Immigration and Naturalization Act ("INA") subjects Wang to mandatory detention, not discretionary detention. Their position rests on an interpretation of the INA that has been uniformly rejected by district courts across the country, including the Northern District of California. By contrast, Wang has made a strong showing that he is likely to succeed on the merits, that he faces irreparable harm in the absence of injunctive relief, and that both the balance of equities and the public interest weigh in his favor. For the additional reasons set forth below, Wang's request for a preliminary injunction is GRANTED.

**BACKGROUND**

Wang is a native and citizen of China who entered the United States without inspection via

the Mexican border on November 7, 2024. *See* Memorandum of Points and Authorities in Support of Application for Temporary Restraining Order ("Mot.") [Dkt. No. 2-1] at 2; Respondent's Response to Order to Show Cause ("Oppo.") [Dkt. No. 15] at 2. On November 7, 2024, the Department of Homeland Security ("DHS") issued Wang a Notice and Order of Expedited Removal. *Id.*; Declaration of Deportation Officer Jennifer Ramirez ("Ramirez Decl.") [Dkt. No. 15-1] ¶ 8, Ex. 2 ("Interim Notice Authorizing Parole") [Dkt. No. 15-2]. Later, on December 18, 2024, Wang was granted interim parole for a period of one year pursuant to 8 U.S.C. § 1082(d)(5)(A). *Id.*

On January 21, 2025, ICE issued Wang a notice "to report to 630 Sansome Street, San Francisco, CA 94111 for a check-in to re-issue a new interim parole." Mot. at 2. At that meeting, Wang claimed a fear of return to China. Oppo. at 10 (citing Ramirez Decl. ¶ 10). He was then provided information on the credible fear interview and the I-589 application process. *Id.* Wang filed an application for asylum with USCIS on March 5, 2025. Mot. at 2. His asylum application was rooted in fear of "persecution by the Chinese police" as they had previously "arrested, beat, and tortured him." *Id.* On June 6, 2025, USCIS issued Wang a Notice of Dismissal of Form I-589, indicating that the "asylum office will issue an appointment notice for credible fear." *Id.* Wang was then paroled into the United States. *Id.* He has continuously remained in the United States since being paroled. *Id.*

On December 18, 2025, Wang's one-year interim parole period expired. Oppo. at 2. Wang was subsequently detained by DHS during a routine check-in that same day. *Id.* He then filed a Petition for Writ of Habeas Corpus and an Ex Parte Motion for Temporary Restraining Order ("TRO") against respondents. Petition for Writ of Habeas Corpus ("Habeas Pet.") [Dkt. No. 1]; Mot. I granted Wang's request for a TRO, prohibiting respondents from "re-detaining Wang without providing him a pre-deprivation hearing before a neutral decisionmaker at which the government establishes by clear and convincing evidence that detention is appropriate to prevent his flight or to protect the public." *See* Order Granting Temporary Restraining Order ("TRO") [Dkt. No. 4] at 7. I also issued an Order to Show Cause, requiring the government to show why a preliminary injunction should not be issued in favor of Wang. *Id.* The TRO was set to expire on

2

1  January 15, 2026, but was later extended by the parties to January 21, 2026.

2  On January 9, 2026, the government submitted its response to my Order to Show Cause. *See* Oppo. Wang replied on January 13, 2026. *See* Petitioner's Reply to Respondents' Response to Order to Show Cause ("Repl.") [Dkt. No. 16]. I held oral argument on January 15, 2026.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). This has been interpreted as a four-part conjunctive test, not a four-factor balancing test. However, the Ninth Circuit has adopted a sliding scale approach, where a plaintiff may obtain an injunction so long as he has demonstrated "serious questions going to the merits," that the balance of hardships "tips sharply" in his favor, that he is likely to suffer irreparable harm, and that an injunction is in the public interest. *See All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).

## DISCUSSION

### I. LIKELIHOOD OF SUCCESS ON THE MERITS

#### a. Detention under Section 1225 or 1226

The crux of the parties' dispute concerns the standard that applies to Wang's immigration detention. Wang alleges that 8 U.S.C. § 1226(a) is the proper authority to determine whether he is subject to mandatory detention. *See* Mot. at 9-16. In response, the government claims that 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) governs. *See* Oppo. at 5. "The distinction between Sections 1225 and 1226 is significant because an alien detained under 1225 is subject to mandatory detention, while an alien detained under 1226 is subject to detention on a discretionary basis."[1] *Rico-Tapia v. Smith*, ---- F. Supp. 3d ----, Civ. No. 25-00379 SASP-KJM, 2025 WL 2950089, at *4 (D. Haw. Oct. 10, 2025). "In other words, an alien whose detention falls under Section 1226 could take advantage of the greater procedural and substantive rights that an alien detained under Section

---

[1] While I use the term "noncitizen" to refer to individuals subject to the INS, I include the original language of "alien" in the statute and other case law references.

1225 could not." *Id.*

### i. Section 1225

Also known as expedited removal, 8 U.S.C. § 1225 applies to any "applicant for admission," which is defined as an "alien present in the United States who has not been admitted" or "who arrives in the United States." 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) covers noncitizens "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* Section 1225(b)(2) is "broader" and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.*

Noncitizens covered by § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). However, should a noncitizen "indicate[] either an intention to apply for asylum . . . or a fear of persecution," that noncitizen is referred to an asylum interview. *Id.*; 8 U.S.C. § 1225(b)(1)(A)(ii). "If an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'" *Id.* (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)). Noncitizens covered by 1225(b)(2), however, are "detained pursuant to a different process." *Id.* at 288. Those individuals "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they] are] not clearly and beyond a doubt entitled to be admitted" into the country. *Id.* (quoting 8 U.S.C. § 1225(b)(2)(A)).

"Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)). Such parole "shall not be regarded as an admission of the alien." 8 U.S.C. § 1182(d)(5)(A). Instead, "when the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C.

4

§ 1182(d)(5)(A)).

###     ii.     Section 1226

"Even once inside the United States, aliens do not have an absolute right to remain here" and may be subject to removal proceedings under Section 1126 of the Immigration and Naturalization Act ("INA"). *Id.* "Section 1226 'provides the general process for arresting and detaining aliens who are *present in the United States* and eligible for removal.'" *Rico-Tapia*, 2025 WL 2950089, at *5 (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (emphasis added)). 8 U.S.C. § 1226(a) states:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General –
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on –
>     (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>     (B) conditional parole; but
> (3) may not provide the alien with work authorization (including an "employment authorized" endorsement or other appropriate work permit), unless the alien is lawfully admitted for permanent residence or otherwise would (without regard to removal proceedings) be provided such authorization.

8 U.S.C. § 1226(a).

"When an alien is detained under Section 1226(a), his initial custody determination is made by an ICE officer." *Rico-Tapia*, 2025 WL 2950089, at *5 (citing *Rodriguez Diaz*, 53 F.4th at 1196)). Under 8 U.S.C. § 1226(a)(2), "the government may release the alien on bond or conditional parole" upon a showing "to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* (citing *Rodriguez Diaz*, 53 F.4th at 1196)). "The second opportunity for bond, a hearing before an immigration judge, often occurs soon thereafter." *Miranda v. Garland*, 34 F.4th 338, 362 (4th Cir. 2022). "At this hearing, the immigration judge will order the alien's release if the alien proves, by a preponderance of the evidence, 'that he is not a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'" *Rico-Tapia*, 2025 WL 2950089, at *5 (quoting *Rodriguez*, 53 F.4th at 1197 (internal quotations omitted)). "In

5

1  making this determination, the immigration judge considers various factors, including the alien's
2  ties to the United States, his employment history, criminal record, history of immigration
3  violations, and manner of entry into the United States." *Id.* They may also determine whether
4  bond is appropriate. *See id.* "Even when released, the alien's bond or parole may be revoked."
5  *Id.* Section 1226(b) indicates that the Attorney General maintains the power "at any time . . . [to]
6  revoke a bond or parole," or rearrest or detain the individual. *See* 8 U.S.C. § 1226(b).

### iii. Whether Section 1225 or Section 1226 Applies to Wang

"When read most naturally, the detention scheme in Section 1226 is supplemented by Section 1225(b)." *Rico-Tapia*, 2025 WL 2950089, at *6. "Taken together, Section 1225 covers persons 'seeking to enter the country,' while Section 1226 applies to persons 'already present in the country.'" *Id.*; *see Jennings*, 583 U.S. at 286–89 (equating Section 1225 with noncitizens "seeking admission into the country," while associating Section 1226 with those "already in the country pending the outcome of removal proceedings").

Respondents maintain that Wang is subject to mandatory detention pending a final determination of credible fear of persecution under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Oppo. at 5. They believe Section 1225(b)(1) applies here because Wang is "present in the United States without having been admitted and is covered by the Secretary of Homeland Security's 2004 designation of those noncitizens as subject to expedited removal." *Id.* at 5-6 (citing 69 Fed. Reg. 48879 (2004)). That memorandum noted that noncitizens "encountered within 14 days of entry without inspection and within 100 air miles of any U. S. international land border" are generally subject to expedited removal proceedings. *See id.* at 3; 69 Fed. Reg. 48879; 8 U.S.C. § 1225(b)(1)(A). Because Wang was detained by ICE in Boulevard, California—located within 100 miles of the U.S.-Mexico border—shortly after his entry into the United States, and because upon apprehension Wang expressed a "fear of returning to China," the government concludes that this "squarely places [him] under 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), which states that he 'shall be detained pending a final determination of credible fear of persecution.'" *Id.* at 6 (quoting 8 U.S.C. § 1225(b)(1)(B)(iii)(IV)); *see* Oppo. Ex. 5 ("Record of Deportable / Inadmissible Alien") [Dkt. No. 15-2] (documenting Wang being apprehended in Boulevard).

1   The government also asserts that contrary to his arguments otherwise, Wang has "never
2   been placed in removal proceedings under 8 U.S.C. § 1229a," as he was served with and signed a
3   Notice and Order of Expedited Removal. *Id.* at 5 (citing Declaration of Jennifer Ramirez
4   ("Ramirez Decl.") [Dkt. No. 15-1] ¶ 7). Because Wang was released on interim parole pursuant to
5   8 U.S.C. § 1182(d)(5)(A), the government contends that he is still subject to § 1225(b)(1), as "the
6   sole means for release from expedited removal is through interim parole." *Id.*[2] Had Wang been
7   subject to Section 1226, the government concludes, his "parole would have been 'conditional
8   parole' under § 1226(a)(2)(B), and not interim parole under § 1182(d)(5)(A)." *Id.*

9   Wang paints a different picture. His argument that he is subject to non-mandatory
10  detention appears to rely on the Laken Riley Act (the "LRA"), Pub. L. No. 119-1, 139 Stat. 3
11  (2025), which amended the language of Section 1226. *See* Mot. at 10. Under the LRA
12  amendments, Wang asserts, "people charged as inadmissible pursuant to § 1182(a)(6) (the
13  inadmissibility ground for presence without admission) or § 1182(a)(7) (the inadmissibility ground
14  for lacking valid documentation to enter the United States) and who have been arrested, charged
15  with, or convicted of certain crimes are subject to § 1226(c)'s mandatory detention provisions."
16  *Id.* (citing 8 U.S.C. § 1226(c)(1)(E)). "[I]f someone is only charged as inadmissible under §
17  1182(a)(6) or (a)(7) and the additional crime-related provisions of § 1226(c)(1)(E) do not apply,
18  then § 1226(a) governs that person's detention." *Id.* Here, Wang points out that he was detained
19  pursuant to § (a)(7)(a)(i)(I) for lack of valid documentation and has not committed any crime
20  listed under § 1226(c)(1)(E). *See id.* As a result, under to the LRA, Wang concludes that §
21  1226(a) governs the terms of his detention. *See id.*

22  As the Hon. Jon S. Tigar wrote two months ago, "Every court in this district to have
23  considered these questions has granted preliminary injunctive relief to similarly situated
24  petitioners, concluding that: (1) Section 1225(b) does not apply to the petitioners; (2) due process
25  requires a pre-deprivation hearing; (3) the petitioners established a likelihood of success on the
26  merits, or at least serious questions going to the merits, of their procedural due process claim; (4)

---

[2] Neither party disputes that Wang was initially released from detention on December 18, 2024 pursuant to Section 1182(d)(5)(A).

7

in the absence of an injunction, the petitioners were likely to suffer irreparable harm in the form of unconstitutional deprivation of liberty; (5) the balance of equities tipped sharply in the petitioners' favor; and (6) the public interest favored an injunction." *Bautista Pico v. Noem*, No. 25-cv-08002-JST, 2025 WL 3295382, at *2 (N.D. Cal. Nov. 26, 2025) (Tigar, J.).[3] I join my colleagues today and decline to depart from this reasoning.

One recent decision I find particularly helpful in concluding that Section 1126(a) likely applies to Wang's claim is *Ibanez Daza v. Albarran*, No. 25-cv-10214-RFL, 2026 WL 81518 (N.D. Cal. Jan. 12, 2026) (Lin, J.). In *Ibanez Dana*, petitioner, a Colombian citizen, crossed the border from Mexico into California and was apprehended by immigration officials. *Id.* at *1. There, immigration officials "found her to be inadmissible and ordered her expedited removal." *Id.* A few days prior to her scheduled removal, petitioner claimed fear of persecution should she return to Colombia; immigration officials then conducted a credible fear interview and found petitioner's claim credible. *See id.* They then released her on humanitarian parole for a period of one year under 8 U.S.C. § 1182(d)(5)(A). *Id.* Exactly one year into her parole, petitioner was detained upon attending a check-in meeting with ICE. *Id.*

Petitioner filed a petition for habeas corpus and a temporary restraining order; in response, the government raised the same argument it does here—that Section 1225(b) applies to the terms

---

[3] Judge Tigar compiled a list of cases in *Bautista Pico* showing the Northern District of California has universally accepted Wang's arguments. *See, e.g.*, *Orozco Acosta v. Bondi*, No. 25-cv-09601-HSG, 2025 WL 3229097, at *2–*5 (N.D. Cal. Nov. 19, 2025); *Caicedo Hinestroza v. Kaiser*, No. 25-cv-07559-JD, 2025 WL 3090767, at *1 (N.D. Cal. Nov. 5, 2025) (adopting reasoning from order granting temporary restraining order, 2025 WL 2606983, at *2–*3); *Pablo Sequen v. Albarran*, ---- F. Supp. 3d ----, No. 25-cv-06487-PCP, 2025 WL 2935630, at *5–*13 (N.D. Cal. Oct. 15, 2025); *Cardenas Castellanos v. Albarran*, No. 25-cv-07962-NW, ECF No. 17 at 11–18 (N.D. Cal. Oct. 14, 2025); *Cordero Pelico v. Kaiser*, No. 25-cv-07286-EMC, 2025 WL 2822876, at *5–*17 (N.D. Cal. Oct. 3, 2025); *Valera Chuquillanqui v. Kaiser*, 25-cv-06320-TLT, ECF No. 26 at 9–18 (N.D. Cal. Oct. 2, 2025); *Valencia Zapata v. Kaiser*, ---- F. Supp. 3d ----, No. 25-cv-07492-RFL, 2025 WL 2741654, at *5–*14 (N.D. Cal. Sept. 26, 2025); *Acosta Roa v. Albarran*, No. 25-cv-7802-RS, 2025 WL 2732923, at *5–*6 (N.D. Cal. Sept. 25, 2025); *Jaraba Oliveros v. Kaiser*, No. 25-cv-07117-BLF, 2025 WL 2677125, at *2–*11 (N.D. Cal. Sept. 18, 2025); *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *5–*14 (N.D. Cal. Sept. 12, 2025); *Hernandez Nieves v. Kaiser*, No. 25-cv-06921-LB, 2025 WL 2533110, at *4–*5 (N.D. Cal. Sept. 3, 2025); *Jimenez Garcia v. Kaiser*, 25-cv-06916-YGR, ECF No. 22 at 4–12 (N.D. Cal. Aug. 29, 2025); *Ortiz Calderon v. Kaiser*, No. 25-cv-06695-AMO, 2025 WL 2430609, at *2–*5 (N.D. Cal. Aug. 22, 2025); *see also, e.g.*, *Aldana Serrano v. Albarran*, No. 25-cv-08408-EKL, 2025 WL 3197879, at *2–*3 (N.D. Cal. Oct. 2, 2025) (granting temporary restraining order).

of petitioner's release. *Id.* at *1–*2. Judge Lin disagreed, entering a preliminary injunction in favor of petitioner. *See id.* at *2–*4. On the issue of the applicability of Section 1125(b), Judge Lin noted that the statute "does not define the term 'seeking admission,'" but that "this Court has previously interpreted the phrase to refer to 'arriving alien[s]' and not to those 'who have been in the country for years.'" *Id.* at *4 (citing *Valencia Zapata*, 2025 WL 2741654, at *10). Because petitioner had been living in the United States for a year at the time of her November 2025 detention, Judge Lin concluded that petitioner was "not an arriving noncitizen seeking entry into the country" and that Section 1225(b)'s mandatory detention provision did not apply. *See id.*

The facts of this case are nearly identical to *Ibanez Daza*. Wang is a Chinese national who entered the United States through the Mexico border on November 7, 2024. *See* Mot. at 2. He was shortly thereafter detained by ICE, who placed him into custody and determined him to be inadmissible due to lack of valid documentation under 8 U.S.C. § 1182(a)(7). *Id.* at 9. On December 18, 2024, Wang was granted interim parole into the United States for a period of one year pursuant to 8 U.S.C. § 1182(d)(5)(A). *Id.* at 2; Interim Notice Authorizing Parole at 6. Later, on March 5, 2025, Wang filed an application for asylum with USCIS and was issued a Form I-589 receipt. Mot. at 2. On June 6, 2025, USCIS issued Wang a Notice of Dismissal of his I-589 asylum application, indicating that the asylum office would issue an appointment notice for credible fear. *Id.* Wang was then paroled into the United States. *Id.* On December 18, 2025, ICE detained Wang at a routine check-in. *Id.* By this point, Wang had been paroled into the United States for exactly one year—the same amount of time petitioner in *Ibanez Daza* had been living in the United States. *See id.*; 2026 WL 81518, at *4. In agreement with my colleagues in the Northern District of California who have routinely interpreted "seeking admission" to refer to arriving noncitizens, not those "who have been in the country for years," I find that Wang has shown a strong likelihood to prevail on the merits. *See id.* The government has failed to provide enough facts to suggest otherwise.

        **b.**    **Procedural Due Process Claims**

Neither party disputes that Wang has a right to due process of law. *See* Oppo. at 6. However, the parties dispute the extent of his rights as they apply to immigration detention.

9

Specifically, the government takes issue with the scope of my temporary restraining order, which prohibited it from "re-arresting or otherwise re-detaining Wang without first providing him a hearing before an immigration judge at which the government establishes by clear and convincing evidence that revocation of his previously-granted interim parole is appropriate." TRO at 1. The government now argues that these protections are not afforded to individuals in Wang's position. *See* Oppo. at 6–8. I disagree.

As explained in the TRO, to establish a viable procedural due process claim, Wang must first identify a protected liberty interest. *See* TRO at 3. Upon identifying a protected liberty interest, courts must determine the procedural due process afforded to the plaintiff under *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Under the *Mathews* test, courts balance three factors: "first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Haygood v. Younger*, 769 F.2d 1350, 1357 (9th Cir. 1985) (en banc) (citing *Mathews*, 424 U.S. at 335).

### 1. Protected Liberty Interest

In the TRO, I noted that "[n]oncitizens like Wang who are conditionally released into the United States have a significant liberty interest in remaining out of immigration custody." TRO at 4 (citing *Pablo Sequen*, 2025 WL 2935630, at *5; *Hurd v. District of Columbia*, 864 F.3d 671, 683 (D.C. Cir. 2017)). The government now disputes this conclusion, arguing that because Wang's "release and redetention complied with the relevant statute and regulations," he has no protected liberty interest under the Fifth Amendment. *See* Oppo. at 10. The government's view is mistaken.

The government appears to argue that Wang's redetention complied with 8 U.S.C. § 1182(d)(5)(A), which states that "when the purposes of such parole shall, in the opinion of the Attorney General, have been served the alien *shall forthwith return or be returned to the custody from which he was paroled* and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." Oppo. at 8–9 (emphasis

1    added). Because parole is "automatically terminated without written notice . . . at the expiration of
2    the time for which parole was authorized," the government concludes that Wang being detained on
3    December 18, 2025—upon the expiration of his parole—was justified. *See id.* (quoting 8 C.F.R. §
4    212.5(e)(1)). The government also claims that Wang "mistakenly analogize[d] his claimed liberty
5    interest in remaining out of immigration custody following his release on interim parole to the
6    recognized liberty interest of U.S. citizens facing redetention." *Id.* at 9–10. In its view, because
7    the Supreme Court has indicated that "Congress may make rules as to aliens that would be
8    unacceptable if applied to citizens," Wang is limited to only the process afforded under the
9    applicable INS statutes. *See id.* at 10 (quoting *Demore v. Kim*, 538 U.S. 510, 522 (2003)).

10   The government relies heavily on *Demore* to support its conclusion, but the facts of
11   *Demore* differ significantly from this case. In *Demore*, the petitioner did not contest that he was
12   subject to mandatory detention or being deported; instead, the petitioner contested his continued
13   detention without being provided a bond hearing pending his deportation. 538 U.S. at 513–14
14   (petitioner "d[id] not dispute the validity of his prior convictions, which were obtained following
15   the full procedural protections our criminal justice system offers"; nor did he "dispute the INS'
16   conclusion that he [wa]s subject to mandatory detention under § 1226(c)"); *see also Merchan-*
17   *Pacheo v. Noem*, No. 1:25-cv-03860-SBP, 2026 WL 88526, at *4 (D. Colo. Jan. 12, 2026)
18   (discussing *Demore*). These differences are quite important: the crux of the parties' disagreement
19   here is over whether mandatory detention applies to Wang's immigration proceedings.

20   Additionally, the government's reliance on *Department of Homeland Security v.*
21   *Thuraissigiam*, 591 U.S. 103 (2020), appears misplaced. There, the Court found that noncitizens
22   detained near the United States border are only afforded "those rights regarding admission that
23   Congress has provided by statute." *Id.* at 140. Here, however, at the time of his December 2025
24   detention, Wang was not at the border and had already been living in the country for a year. *Cf.*
25   *Ibanez Daza*, 2026 WL 81518, at *5. Further, Wang "does not challenge any procedures
26   regarding admission but rather h[is] detention." *Id.* Under these facts, therefore, *Thuraissigiam*
27   "neither limits h[im] to the procedures afforded by statute." *Id.*
28   So too is the government's reference to *Leng May Ma v. Barber*, 357 U.S. 185 (1958),

11

inapposite. The government cites *Leng May Ma* for its recognition that:

> The parole of aliens seeking admission is simply a device through which needless confinement is avoided while administrative proceedings are conducted. It was never intended to affect an alien's status, and to hold that petitioner's parole placed her legally within the United States is inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of this Court.

*Id.* at 190. But *Leng May Ma* also highlights a distinction "between those aliens who have come to our shores seeking admission . . . and those who are within the United States after an entry, irrespective of its legality." *Id.* at 187. "In the latter instance the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'" *Id.* "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Here, Wang has demonstrated that the circumstances surrounding his arrest and parole likely afford him broader procedural due process protections than "those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140. *Cf. Aviles-Mena v. Kaiser*, No. 25-cv-06783-RFL, 2025 WL 2578215, at *3–*5 (N.D. Cal. Sept. 5, 2025) (finding a liberty interest in freedom from detention in similar circumstances).[4]

### 2. Mathews v. Eldrige

In the TRO Order, upon finding that there was a "serious question[] going to the merits" of Wang's procedural due process claim, I applied the *Mathews v. Eldridge* test and concluded that respondents were required to provide notice and a hearing before a neutral decisionmaker before re-detaining Wang. *See* TRO Order at 3–5. The government's opposition claims that "[a]bsent a constitutionally cognizant liberty interest, the test from *Mathews v. Eldridge*, 424 U.S. 319 (1976) does not apply," as Wang has failed to show a liberty interest considering the government's alleged compliance with the INS. Oppo. at 10. As explained above, I do not find the

---

[4] The government urges me to read *Aviles-Mena* as being "wrongly decided," as the "expiration of parole returns [Wang] to the legal status he had when he was paroled, i.e. subject to expedited removal and mandatory detention under § 1225(b)(1)." Oppo. at 9 n.4. I decline to do so. *Aviles-Mena* is still good law and, at the very least, presents a "serious question[] going to the merits" of his due process claim. *See All. For the Wild Rockies*, 865 F.3d at 1217.

government's argument persuasive.

As a threshold matter, I assume that *Mathews* applies to this case. While the Supreme Court, "when confronted with constitutional challenges to immigration detention, has not resolved them through express application of *Mathews*," the Ninth Circuit has "assumed (without deciding) that it applies to due process claims in the immigration detention context." *Manukyan v. Warden of the Golden State Annex*, No. 1:25-cv-01394-SKO (HC), 2026 WL 84079, at *4 (E.D. Cal. Jan. 12, 2026) (citing *Demore*, 538 U.S. at 523, 526–29; *Rodriguez Diaz*, 53 F.4th at 1206–07).

Given the government's lack of argument on the issue, I find that all three *Matthews* factors favor Wang, and that the government should have provided him the opportunity to appear before a neutral decisionmaker upon re-detaining him. *See* TRO at 4–5. With respect to his private liberty interests, Wang has sufficiently shown that he "has an interest in remaining in h[is] home . . . providing for h[is] family . . . [and] maintaining h[is] relationships in the community" without detention. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025) (Pitts, J.) (citing *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 167684 (N.D. Cal. June 14, 2025)). He has also shown that it is likely that the government erred by not determining whether Wang is a flight risk or danger to the community when deciding to detain him. *See* TRO at 4–5. And a hearing before a neutral decisionmaker is a "de minimis . . . burden on the government," especially considering the potential costs to the public by keeping Wang detained. *Id.* at 5 (citing *Castro-Cortez v. INS*, 239 F.3d 1037, 1049 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006)).

Taken together, the *Mathew* factors all point towards a clear conclusion—Wang has a strong argument on the merits that he was not afforded the protections guaranteed by the Due Process Clause of the Fifth Amendment.

## II.     IRREPARABLE HARM

"[S]imply showing some 'possibility of irreparable injury' fails to satisfy" the irreparable harm factor. *Nken*, 556 U.S. at 434–35 (citing *Abbassi v. INS*, 143 F.3d 513, 514 (9th Cir. 1998), *abrogated on other grounds*, *Singh v. Holder*, 658 F.3d 879 (9th Cir. 2011)). Rather, plaintiffs must provide sufficient evidence showing that they will be "irreparably injured absent" a

13

1   preliminary injunction. *Id.* at 426.

2         In the TRO Order, I found that Wang had demonstrated a likelihood of irreparable harm,

3   because "[t]he loss or threatened infringement upon [constitutional] rights for even minimal

4   periods of time unquestionably constitutes irreparable injury." TRO at 5 (quoting *Cuviello v. City*

5   *of Vallejo*, 944 F.3d 816, 832 (9th Cir. 2019) (citation modified)). As Wang "will likely be

6   deprived of [his] physical liberty unconstitutionally in the absence of [an] injunction," I found that

7   it "follows from this conclusion . . . 'that [Wang met his] burden as to irreparable harm.'" *Id.* at 6

8   (quoting *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017)). The government does not

9   dispute the analysis underlying this determination; it instead argues that Wang is subject to

10  mandatory detention and has not shown a likelihood of success on the merits of his due process

11  claims. As discussed above, however, Wang is subject to discretionary detention, and he has

12  shown serious questions going to the merits of his claims. Accordingly, my initial finding that

13  Wang has shown irreparable harm still stands.

14  **III.   PUBLIC INTEREST AND BALANCE OF EQUITIES**

15        In cases where the federal government is the opposing party, the balance of the equities

16  and public interest factors merge. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th

17  Cir. 2014). These two factors often turn on whether the district court finds a likelihood of success

18  on the merits of the underlying claim. *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1069

19  (9th Cir. 2014).

20        In the TRO Order, I noted:

> Because Wang has sufficiently alleged the policies preventing him from obtaining bond "is inconsistent with federal law . . . the balance of hardships and public interest factors weigh in favor" of granting the temporary restraining order. *Moreno Galvez v. Cuccinelli*, 387 F. Supp. 3d 1208, 1218 (W.D. Wash. 2019). "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird*, 81 F.4th at 1042 (citation modified). Where Wang is suffering irreparable harm in detention, the potential harm to the government—at worst, a short delay in detaining Wang until it makes the requisite showing of necessity before a neutral decisionmaker—is minimal. *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

14

TRO at 6. The government again does not contest this finding and instead focuses on the likelihood of success on the merits factor as being dispositive. Finding that Wang has presented serious questions as to the merits of his claim, I conclude that these factors weigh in Wang's favor.

## CONCLUSION

For the foregoing reasons, I ENTER the following preliminary injunction:

Respondents are ENJOINED and RESTRAINED from re-detaining Wang: (1) without notice and a pre-deprivation hearing before a neutral decisionmaker in which an individualized determination is made that he poses a flight risk or danger to public safety such that he must be detained; or (2) in the absence of a material change in circumstances justifying his detention. Respondents are also ENJOINED and RESTRAINED from removing Wang from the United States to preserve this Court's jurisdiction during the pendency of the action. This Order shall remain in effect until further order of the Court.

To the extent that Wang seeks to direct respondents to "adjudicate Petitioner's affirmative asylum application before USCIS," that request is DENIED as it applies to this preliminary injunction. Such relief is best sought through a writ of mandamus, rather than through habeas.

**IT IS SO ORDERED.**

Dated: January 20, 2026



William H. Orrick
United States District Judge